Attachment H-1

# IN THE U.S. DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : : |
| Plaintiff, | : : |
| V. | : Case No. 1:16-cv-02459-SCJ |
| | : |
| THOMAS W. AVENT, Jr., and RAYMOND J. PIRRELLO, Jr., | : : : |
| Defendants. | : |

## PLAINTIFF'S TRIAL BRIEF

Plaintiff U.S. Securities and Exchange Commission ("the SEC"), states as follows:

## PRELIMINARY STATEMENT

This trial of this insider trading case will present several important evidentiary issues. As explained in its Outline of the Case, filed separately herewith, the SEC will present evidence that Defendant Thomas Avent acquired material nonpublic information about three upcoming acquisitions through his tax due diligence work at KPMG, and that before each of those acquisitions Avent tipped Defendant Raymond Pirrello, who then tipped Defendant Lawrence Penna. The SEC will also demonstrate that Lawrence Penna and other

members of his family invested in the stock or options of each of the target companies, before the acquisitions were publicly announced, and sold their securities for a profit after the announcements.

Avent does not deny that he worked on the three relevant engagements, that he knew the names of each of the three target companies, and that he communicated with Pirrello by telephone and text message before each of the acquisition announcements.  Avent also does not deny that he received a $50,000 payment from Pirrello, that he demanded additional payment from Pirrello for past trading losses, that he sought Pirrello's assistance in selling an illiquid, past-due promissory note, and that he maintained his relationship with Pirrello into 2016.  Pirrello does not deny that he communicated with Lawrence Penna, by telephone and text message, shortly after communicating with Avent, that Penna and his family members purchased stock and options of the target companies before the acquisitions, and that several of his other clients also made timely investments in the securities of the target companies before the acquisitions were publicly announced.  Pirrello also does not deny that Penna is a close family friend, that Penna made several payments into Pirrello's AMEX credit card account, and that Pirrello maintained his relationship with Avent into 2016. Former defendant Lawrence Penna does not deny any of the SEC's allegations,

has consented to a judgment in favor of the SEC, and has declined to testify in this matter, because he is asserting his rights under the Fifth Amendment. (*See* Exhibit A, Declaration of Lawrence Penna)

Avent and Pirrello both deny that they violated the securities laws by engaging in insider trading. More specifically, they each deny ever discussing any of the securities at issue; they deny that they ever engaged in tipping; and they also deny that they received a personal benefit in connection with any illegal tipping. So the Court should expect the parties to offer disputed evidence about what the communications between defendants were about, the nature of the payments that Penna made for Pirrello, the nature of the payment Pirrello made to Avent, and Avent's sale of the overdue promissory note.

The Defendants, however, may also offer other evidence and arguments concerning irrelevant and extraneous topics, which will misstate the law, confuse the issues, mislead the jury, and waste time by needlessly lengthening the trial. For example, the Defendants may argue that the SEC cannot meet its burden of proof with circumstantial evidence. This line of attack—the suggestion that circumstantial evidence is inferior to direct evidence—is wrong as a matter of law, and will confuse the issues and mislead the jury. The Defendants also may argue that the SEC must prove that no one else in the "universe" of KPMG

partners and employees tipped Pirrello, in other words that the tipper could not possibly have been anyone except Avent. This argument is founded on a misstatement of the SEC's burden of proof. And finally, the Defendants may seek to put the SEC on trial by attacking the investigation that led to the filing of this case. Argument and evidence of this sort is not admissible.

## ARGUMENT

The SEC must establish an insider trading claim by a preponderance of the evidence. *SEC v. Ginsburg*, 362 F.3d 1292, 1298 (11th Cir. 2004). *See also Steadman v. SEC*, 450 U.S. 91, 95 (1981)(rejecting clear-and-convincing standard of proof and affirming decision of Fifth Circuit that burden of proof is preponderance-of-the-evidence in context of fraud charges alleged in SEC administrative proceedings).

A preponderance of the evidence means that evidence in support of the SEC's claim must be more convincing and persuasive, however slightly, than the evidence opposed to it. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 388-91 (1983); *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 355 (1943). That is all that this SEC is required to offer, and all that a reasonable jury needs, for the SEC to prevail on its claims.

To establish a claim for insider trading under Section 10(b) of the Exchange Act and Rule 10b-5, the SEC must prove that the defendant "(1) tip[ped] (2) material non-public information (3) in breach of a fiduciary duty of confidentiality owed to shareholders (classical theory) or the source of the information (misappropriation theory) (4) for personal benefit to the tipper." *SEC v. Obus*, 693 F.3d 276, 286 (2d Cir. 2012). The SEC also must establish that the defendant acted with *scienter*. *Id.*

The SEC has also alleged that the Defendants Avent and Pirrello violated Section 14(e) of the Exchange Act and Rule 14e-3(a) thereunder, in connection with the Radiant and Midas mergers, which were tender offers. The claims under Section 14(e) and Rule 14e-3(a) differ from the claims under Section 10(b) and Rule 10b-5 in some significant aspects. In the context of Section 14(e) and Rule 14e-3, proving *scienter* requires that the tippee "possess material nonpublic information," and that the "material nonpublic information be used in a trade." *Ginsburg*, 362 F.3d at 1297-98. "Proof of knowledge of such information at the time of a trade gives rise to a strong inference of use." *Id.* In addition, Section 14(e) and Rule 14e-3 impose an obligation to "disclose or abstain" from trading or tipping regardless of whether an individual owes a fiduciary duty to respect the confidentiality of the information. Tender Offers, Sec. Exch. Act Rel.

No. 34-17120, 1980 WL 20869, at *6 (Sept. 4, 1980). . . ." *O'Hagan*, 521 U.S. 642, 673 (1997); *United States v. Chestman*, 947 F.2d 551, 557 (2d Cir. 1991); *SEC v. Maio*, 51 F.3d 623, 635 (7th Cir. 1995). Rule 14e-3 does not require that the person have knowledge that the material, nonpublic information in his possession relates to a tender offer. *Ginsburg*, 362 F.3d at 1304; *SEC v. Sargent*, 229 F.3d 68, 79 (1st Cir. 2000). *See also* "Tender Offers," Securities Exchange Act Release No. 34-17120, 1980 WL 20869, at *6.

### A. The SEC Need Not Offer Direct Evidence Of The Communications Between A Tipper And Tippee.

The Defendants may suggest that the SEC's evidence is insufficient because there are no recordings, confessions, secret documents, or other direct evidence of Avent providing tips about any of the deals to Pirrello. This is nothing more than a distraction and has no basis in the law.

The SEC is not required to present direct evidence of insider trading. To the contrary, circumstantial evidence is more than sufficient to find that a defendant engaged in insider trading. The SEC "may use direct or circumstantial evidence" to prove insider trading. *See Ginsburg*, 362 F.3d at 1298; *see also United States v. Larrabee*, 240 F.3d 18, 24 (1st Cir. 2001) ("When assembled, the pieces of the puzzle create a picture that supports the inference that Larrabee did possess material, nonpublic information about the bank merger."); *SEC v. Berrettini*, 2012

WL 5557993, at *9 (N.D. Ill. 2012) (holding that "it is not the SEC's burden to present *direct* evidence" of insider trading, as "many courts" have observed) (emphasis in original); *SEC v. Roszak*, 495 F. Supp. 2d 875, 886 (N.D. Ill. 2007) ("Courts in this District and elsewhere have held that the SEC is entitled to provide its case through circumstantial evidence."); *SEC v. Pardue*, 2005 WL 736884, at *5 (E.D. Pa. Apr. 1, 2005); *SEC v. Van Wagner*, 1999 WL 691836, at *3 (N.D. Ill. Aug. 25, 1999); *SEC v. Warde*, 151 F.3d 42, 47 (2d Cir. 1998). "Indeed, as courts and commentators have recognized, direct evidence is rarely available in insider trading cases, since usually the only witnesses to the exchange are the insider and the alleged tippee, neither of whom are likely to admit to liability." *SEC v. Roszak*, 495 F. Supp. at 887.

Circumstantial evidence is not a lesser form of evidence. "Circumstantial evidence has no less weight than direct evidence as long as it reasonably establishes that fact rather than anything else." *Ginsburg*, 362 F.3d at 1298 (citation omitted). As the Supreme Court explained: "Circumstantial evidence is not only sufficient, but may also be more certain, satisfying, and persuasive than direct evidence." *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960).

Here, there is more than sufficient circumstantial evidence for a reasonable trier of facts to conclude that Defendant Avent tipped Defendant Pirrello with

material, non-public information, and that Pirrello tipped Penna. The evidence will show that Avent, an attorney and CPA, was a partner at the accounting firm of KPMG. He held a senior position of trust and responsibility at the firm. During 2011 and 2012, Avent worked on all three of the mergers at issue here and obtained material non-public information about all three deals.

Around each of the three mergers, the same pattern of communications and trading took place: Avent and Pirrello communicated; Pirrello communicated with Penna; Penna communicated with his son; Penna's son purchased stock and options of the merger target; the merger was announced; and the Pennas liquidated their positions for substantial profits. Other clients of Pirrello also bought and sold around the merger announcements and profited handsomely from their trades.

The defendants knew what they were doing. Avent knew that the information he learned through his due diligence work was confidential and that he should not disclose it. Pirrello had been a stock broker for almost twenty years; and Penna also had a long history in the securities industry.

Prior to the public announcement of the Radiant merger, Pirrello and Penna exchanged text messages in which Pirrello inquired how many shares "we" got and predicted that "we should make 25K." After the Pennas had

begun buying Midas securities, Pirrello sent Avent a text message on February 27, 2012 asking, "What happen to that thing?" Avent promptly responded, "Hear still going forward." Avent and Pirrello then spoke by telephone. Pirrello and Penna then spoke by telephone, Penna spoke with his son, and Penna's son then bought more Midas securities. After the public announcement of the Midas tender offer, Avent sent a text asking whether Pirrello was "Happy?"

Avent and Pirrello both benefited from their conduct. In July 2011, just after the Radiant acquisition, Penna transferred $7,500—half his trading profits—into Pirrello's AMEX credit card account. Then in March 2012, one week after the Midas merger, Penna transferred $14,000 to Pirrello's AMEX credit card account. In early 2011, Pirrello informed Avent of an opportunity to invest in a promissory note which gave Avent the opportunity to recoup some prior trading losses Avent had experienced in his brokerage account. A few months after the Radiant announcement, in November 2011, Pirrello sent Avent a check for $50,000, made payable to "Cash." In early 2012, Avent wanted Pirrello's help selling the promissory note, which by then was overdue. Then in August 2012, shortly after the BrightPoint announcement, Pirrello found a buyer who purchased the overdue note from Avent for its full face value. This buyer was another Pirrello client. Throughout 2011 and 2012, Pirrello continued to provide

9

investment advice to Avent, who kept his brokerage account with Pirrello until 2016. All the dealings between Avent and Pirrello, took place against the backdrop of Avent's efforts to recover $535,000 from Pirrello in trading losses and Pirrello's desire to avoid damage to his career as a broker from a breach with Avent.

**B.     The Argument That The Tipper Could Have Been Someone Else Besides Avent Is Irrelevant.**

Defendants may try to shift the blame—suggesting that there is an entire universe of people (at KPMG or elsewhere) who could have tipped Pirrello, and therefore the SEC is obligated to eliminate each of these purported suspects in order to prove Avent and Pirrello liable. But the SEC does not have to prove that no one else in the universe tipped Pirrello. The SEC simply needs to prove that it is more likely than not that Avent tipped Pirrello and that Pirrello tipped Penna.

The SEC need only prove, by a preponderance of the evidence, that Avent provided material, non-public information to Pirrello, in breach of a duty to KPMG for a personal benefit, and did so with *scienter,* and that Pirrello provided material, non-public information to Penna, and did so with *scienter,* and that Penna traded. *See Obus*, 693 F.3d at 286. The SEC does not have to prove that Defendants are the only possible tippers. In fact, the SEC does not have to prove anything at all about non-defendants.

Defendants may argue that it is "unreasonable" to conclude that they were the only possible tippers, given the universe of other possibilities. But it is not the SEC's burden to foreclose all other reasonable explanations (as an aside, there are none). *See, e.g.*, *United States v. Gupta*, 747 F.3d 111, 137-38 (2d Cir. 2014) (affirming criminal insider trading conviction where trial judge excluded defendant's evidence of purported alternative tipper). In this civil action, the burden of proof is a preponderance of the evidence. *Ginsburg*, 362 F.3d at 1298. The SEC does not have to prove that any or all other explanations are unreasonable.

Defendants' attempt to expand the universe of potential tippers suffers from a second problem. Such a universe of potential suspects is entirely speculative. *See, e.g., United States v. Ulbricht,* 858 F.3d 71, 118 (2d Cir. 2017) ("[T]o avoid a 'grave risk of jury confusion,' a defendant must offer more than 'unsupported speculation that another person may have done the crime.'" (*quoting Wade v. Mantello*, 333 F.3d 51, 61-62 (2d Cir. 2003)). Here, the tipper needs both inside knowledge about each of the three mergers; and a close connection to the tippee. That is why the SEC's evidence in this case is so powerful. Avent had knowledge of all three deals and a long relationship with Pirrello, a relationship that Avent and Pirrello each, for his own reasons, desired

to maintain. Pirrello, for his part, had both a connection to Avent, who had inside information about all three deals, and a long-time, close friendship with Penna, the trader.

Accordingly, the probative value of evidence about the universe of other KPMG employees is substantially outweighed by unfair prejudice absent some predicate showing that there is reason to believe—something beyond mere speculation—that they may have tipped Pirrello or Penna.

**C.     It Is Not A Defense To Second-Guess The SEC's Investigation.**

Another strategy which Defendants may invoke (Avent has already done so) is attacking the SEC's investigation. Suffice it to say that it is not Defendants' place to pass judgment on the SEC's investigation. The jury can render a verdict on the merits of the SEC's evidence.

At trial, any statements about perceived shortcomings in the SEC's investigation – as opposed to evidence about the conduct of Defendants – would be well out of bounds. *See, e.g., United States v. Bautista*, 252 F.3d 141, 145 (2d Cir. 2001) (holding that defense summation "amounted to an (improper) invitation for the jury to consider the government's choice of investigative techniques"); *United States v. Patrick*, 248 F.3d 11, 22 (1st Cir. 2001) ("Merely showing that an investigation is sloppy does not establish relevance."); *United States v. Veal*, 23

F.3d 985, 989 (6th Cir. 1994) (same); *SEC v. Tourre*, 10-cv-3229 (S.D.N.Y. 2013), 7/9/13 Tr., at 7-8 (barring evidence about "investigative steps"). Second-guessing the SEC's charging decisions is out of bounds, too. *See United States v. Armstrong*, 517 U.S. 456, 463-64 (1996).

It makes no difference how the SEC gathered information, or reached the conclusion to charge Defendants with insider trading. At this point, the only thing that matters is whether it is more likely than not that Defendants engaged in insider trading.

**D.    Remedies**

In total, the Pennas gained profits of approximately $111,422 by trading in Radiant, Midas and BrightPoint after being tipped by Pirrello. The SEC intends to seek civil monetary penalties based on the profits gained by the Pennas, together with permanent injunctive relief, against Defendants Avent and Pirrello. *See* 15 U.S.C. § 78u(d)(1) and § 78u-1(a). All the issues regarding remedies are to be decided by the Court, rather than by the jury, in a subsequent proceeding in the event that the SEC prevails against one or both defendants on liability issues.

Dated:  July 21, 2017.                    Respectfully submitted,

*/s/ John E. Birkenheier*
John E. Birkenheier
Georgia Bar No. 058158
birkenheierj@sec.gov

Robert M. Moye (admitted *pro hac vice*)
Illinois Bar No. 6225688
moyer@sec.gov
Ruta G. Dudenas (admitted *pro hac vice*)
Illinois Bar No. 6274848
dudenasr@sec.gov
SECURITIES AND EXCHANGE
COMMISSION
175 West Jackson Boulevard, Suite 900
Chicago, Illinois  60604
(312) 353-7390
(312) 353-7398 (fax)

Pat Huddleston II
Georgia Bar No. 373984
huddlestonp@sec.gov
SECURITIES AND EXCHANGE
COMMISSION
950 East Paces Ferry, N.E., Suite 900
Atlanta, GA 30326-1382
(404) 842-7600
(404) 5752 (fax)

*Attorneys for Plaintiff Securities
and Exchange Commission*

## Certificate of Service

I hereby certify that on July 21, 2017, I caused copies of **Plaintiff's Trial Brief** to be served on the following by email by means of the Courts ECF system:

James W. Cobb (jcobb@caplancobb.com)
T. Brandon Waddell (bwaddell@caplancobb.com)
Caplan Cobb LLP
75 Fourteenth Street NE, Suite 2750
Atlanta, GA 30309

Todd Harrison (tdharrison@mwe.com)
McDermott Will & Emery LP
340 Madison Avenue
New York, NY 10173

*Counsel for Defendant Thomas W. Avent, Jr.*

Gregory S. Brow (greg.brow@dentons.com)
Jeffrey A. Zachman (jeffrey.zachman@dentons.com)
Dentons US LLP
303 Peachtree Street, NE, Suite 5300
Atlanta, GA  30308

Martin H. Kaplan (mkaplan@gusraekaplan.com)
J. Christopher Albanese (calbanese@gusraekaplan.com)
Gusrae Kaplan Nusbaum PLLC
120 Wall Street, 25th Floor
New York, NY 1005

*Counsel for Defendant Raymond J. Pirrello*

                                         */s/ Robert M. Moye*
                                         Robert M. Moye