IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Case No. 1:16-cv-02459-SCJ |
| v. | |
| THOMAS W. AVENT, Jr., and RAYMOND J. PIRRELLO, Jr. | JURY TRIAL DEMANDED |
| Defendants. | |

**DEFENDANT THOMAS W. AVENT Jr.'S
TRIAL BRIEF ON THE SEC'S BURDEN OF PROOF**

Defendant Thomas W. Avent, Jr. ("Avent") provides this Trial Brief to address an issue that will arise in the trial of this action—specifically, the SEC's burden of proof. As explained below, Avent encourages the Court to require the SEC to meet a clear-and-convincing-evidence burden. In a case like this—where the federal government is punishing a private citizen for alleged fraud based on circumstantial evidence—the clear-and-convincing standard is necessary to protect Avent's liberty and property interests. It also acts as an additional bulwark against the injustice of a false finding of liability. That risk is especially high here, where the SEC did not conduct even a basically competent investigation before training

1

its sights on Avent. Avent is innocent of the SEC's charges, and before the SEC may wreak further havoc on Avent's life, it should be required to prove its claims by something more than a preponderance standard.

## BACKGROUND

Before this case was filed, Avent was the partner in charge of M&A/Tax in the southeastern United States for KPMG, LLP. In that position, he frequently supervised tax-related due diligence for KPMG clients that were considering acquiring publicly traded companies. The SEC alleges that Avent tipped nonpublic information about three such potential acquisitions (the "Deals") to his stockbroker, Ray Pirrello, who in turn disclosed it to a friend, who in turn traded on the nonpublic information.

The SEC has no direct evidence of any tip. Indeed, the SEC's case is built upon unsupported assumptions (such as the assumption that if there was a tip, it must have come from KPMG) and unreasonable inferences (such as the inference that Avent tipped). Both Avent and Pirrello have testified under oath that Avent did not disclose any nonpublic information about the Deals, and none of the numerous other individuals who have been interviewed or deposed by the government has testified that Avent provided nonpublic information to Pirrello. The SEC intends to prove its case by circumstantial evidence alone—that Avent

worked at KPMG, that he had knowledge of the Deals, and that he had a relationship with Pirrello.[1]

The SEC uses this circumstantial evidence to seek harsh penalties—really, punishments—against Avent. Specifically, the SEC seeks civil penalties, "disgorgement" (of profits Avent never obtained), and an injunction against violations of securities laws. The injunction itself would prohibit Avent from working for any issuer who intended to rely on the exemptions provided in Rule 506 Regulation D, severely limiting any future employment opportunities.[2] Complaint (Doc. 1) at 37-38; 17 C.F.R. § 230.506(d).

Avent has been entrusted with confidential information for his entire career. Before his 19 years with KPMG, he worked at several well-respected law firms in New York and Washington, D.C., at the United States Tax Court, and at George Washington University. Until the filing of this lawsuit, Avent had never been accused of doing anything wrong or improper with confidential information. He

---

[1] As discussed in Avent's Reply Brief in Support of his Motion to Compel KPMG to Produce Documents (Doc. 97), at least five other individuals at KPMG also had nonpublic knowledge of the Deals and a relationship with Pirrello or his firm, Garden State.

[2] Rule 506 is the most widely used exemption for conducting private placements of securities offerings.

has never been the subject of a disciplinary proceeding or even of a client's complaint.

Just the filing of this complaint has had disastrous consequences for Avent. KPMG terminated his partnership, thereby cutting off Avent's main source of income. Due to the public filing of the complaint, Avent's reputation is in tatters, and thus his future prospect for income is negligible. And due to the collaboration between KPMG and the SEC to deny Avent his contractually obligated indemnification of legal fees, Avent has had to personally bear the financial strain of providing for his defense. To top all that off, the SEC seeks to label Avent as a quasi-criminal and to punish him with sanctions that go far beyond remedying any harm he allegedly caused. It wants to curtail the possibility of any future employment. And it wants to do all this on the basis of circumstantial evidence. The SEC should be required to prove its case by clear-and-convincing evidence.

## ARGUMENT AND CITATION TO AUTHORITY

The Court should require the SEC to prove its claims by clear-and-convincing evidence. The SEC brought this case under §§ 10(b) and 14(e) of the Exchange Act. Those sections are silent on burden of proof. It is thus up to the judiciary to supply one. *See Steadman v. SEC*, 450 U.S. 91, 95 (1981). The Supreme Court has never spoken on the issue of what burden of proof should apply

in enforcement actions the SEC brings in federal court (like this one), as opposed to such actions brought in the SEC's administrative forum. But because important individual interests and rights would be implicated by the imposition of penalties in a civil enforcement proceeding, the SEC should be required to prove its case by clear-and-convincing evidence.

Avent acknowledges that there are cases holding the SEC to a preponderance-of-the-evidence standard. For example, in *Steadman*, 450 U.S. at 91, the Supreme Court held that the preponderance standard applies to SEC administrative enforcement action. But that decision was based on an interpretation of § 7 of the Administrative Procedure Act, which governs in-house SEC administrative proceedings. *Id.* at 97-102. Because the APA does not apply to actions brought in federal court, *Steadman* does not require application of the preponderance standard.

The Supreme Court has also held that private plaintiffs seeking to recover damages in suits under § 10(b) of the Exchange Act must establish a violation by a preponderance of the evidence. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389-90 (1983). This holding is only logical when considering that plaintiffs in civil suits recover damages to compensate them for their injuries, not (as is the SEC's goal here) to punish defendants. A finding of liability between private citizens is

not equivalent to the federal government's imposition of a punishment. *See Kokesh v. SEC*, 137 S. Ct. 1635, 1643 (2017).

Avent also acknowledges that the Eleventh Circuit has previously stated that the SEC may prove violations of § 10(b) and § 14(e) in federal court by a preponderance of the evidence. *See SEC v. Ginsburg*, 362 F.3d 1292, 1298 (11th Cir. 2004) ("The SEC must prove violations of § 10(b) and § 14(e), and their supplementary Rules, by a preponderance of the evidence . . . .") (citing *Huddleston*). But this Court is not obligated to follow *Ginsburg*, as the statement concerning burden of proof was dicta, and the burden of proof was not an issue on appeal. And even if *Ginsburg* can be read as having held that the SEC must prove its federal-court enforcement actions by a preponderance of the evidence, Avent respectfully submits that *Ginsburg* was wrongly decided because the preponderance standard set forth in *Huddleston* applies only to suits between private parties.

Further, the *Huddleston* decision itself noted that, although a preponderance standard applies in private actions, the Supreme Court "required proof by clear and convincing evidence where particularly important individual interests or rights are at stake." *Huddleston*, 459 at 389. Consistent with that notion, numerous cases hold plaintiffs—both governmental and private—to a clear-and-convincing

6

standard when important individual interests are at issue. *See, e.g.*, *Sentosky v. Kramer*, 455 U.S. 745 (1982) (termination of parental rights); *Woodby v. INS*, 385 U.S. 276, 285-86 (1966) (deportation); *In re Ryder*, 263 F. Supp. 360, 31 (E.D. Va.), *aff'd*, 381 F.2d 713 (4th Cir. 1967) (disbarment).

Here, the potential imposition of severe penalties with far-reaching consequences on Avent's life demands that the SEC be held to a clear-and-convincing burden of proof. "[C]ivil penalties go beyond compensation, are intended to punish, and label defendants wrongdoers." *Gabelli v. SEC*, 568 U.S. 442, 451-52 (2013). The civil penalties, injunction, and disgorgement the SEC seeks here are penal. If the SEC wants to punish Avent—and wants to do it based on circumstantial evidence that is more reasonably interpreted as being entirely innocent—then it should come forward with something more than a 50%-plus-one, preponderance-based likelihood of success.

Just last month, the Supreme Court unanimously held that when the SEC imposes disgorgement on a defendant, it imposes a penalty within the meaning of 28 U.S.C. § 2462. *Kokesh*, 137 S. Ct. at 1639 ("Disgorgement in the securities-enforcement context is a 'penalty' within the meaning of § 2462 . . . ."). The primary purpose of disgorgement is not, as the SEC had argued, to compensate victims or restore the *status quo*. *Id.* at 1643. Instead, it is to deter others from

7

violating securities laws. But "[s]anctions imposed for the purpose of deterring infractions of public laws are inherently punitive because 'deterrence [is] not [a] legitimate nonpunitive governmental objective[e].'" *Id.* (quoting *Sell v. Wolfish*, 441 U.S. 520, 539 n.20 (1979)) (first alteration added). The Supreme Court also observed that disgorgement imposed in an insider-trading case could be particularly punitive. That is, when an individual who allegedly "provide[d] confidential trading information [is] forced to disgorge proceeds gained by individuals who received and traded based on that information—even though they never received any profits. . . . [,] disgorgement does not simply restore the status quo; it leaves the defendant worse off." *Id.* at 1645.

The consequences of the penalties the SEC seeks here cannot be understated. Just by bringing this action, the SEC has ruined Avent's reputation and levied enormous financial burdens on him. If imposed, the penalties the SEC seeks would permanently label Avent as a fraudster. They would force him to "disgorge" to the federal coffers profits that he never received. They would prohibit Avent from any future employment with an issuer seeking to rely on the Rule 506 exemption to registration, essentially a career-ending sanction. *See, e.g.*, *Truax v. Raich*, 239 U.S. 33, 41 (1915) ("It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the

8

personal freedom and opportunity that it was the purpose of the [Fourteenth] Amended to secure."); *Shaw v. Hosp. Auth. of Cobb Cnty.*, 507 F.2d 625, 628 (5th Cir. 1975) ("the right to practice any of the common occupations of life" is a liberty interest within the Fourteenth Amendment). What's more, the SEC wants to impose these penalties based on circumstantial evidence alone. It should not be allowed to do so unless it can meet the clear-and-convincing-evidence standard of proof.

## CONCLUSION

Avent accordingly respectfully requests that this Court hold that the SEC must prove the alleged violations of § 10(b) and § 14(e) of the Exchange Act by clear and convincing evidence to prevail in this action.

Respectfully submitted this 21st day of July, 2017.

|  |  |
|---|---|
|  | */s/ James W. Cobb* |
|  | James W. Cobb |
|  | Georgia Bar No. 420133 |
|  | jcobb@caplancobb.com |
| **CAPLAN COBB LLP** | T. Brandon Waddell |
| 75 Fourteenth Street NE | Georgia Bar No. 252639 |
| Suite 2750 | bwaddell@caplancobb.com |
| Atlanta, GA 30309 | Julia Blackburn Stone |
| Tel: (404) 596-5600 | Georgia Bar No. 200070 |
| Fax: (404) 596-5604 | jstone@caplancobb.com |

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D, I hereby certify that this brief has been prepared in Times New Roman, 14-point font, one of the font and point selections approved by this Court in Local Rule 5.1C.

*/s/ James W. Cobb*
James W. Cobb
Georgia Bar No. 420133
jcobb@caplancobb.com

**CAPLAN COBB LLP**
75 Fourteenth Street NE
Suite 2750
Atlanta, GA 30309
Tel: (404) 596-5600          *Attorney for Defendant Thomas W.*
Fax: (404) 596-5604          *Avent, Jr.*