IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : : | |
| Plaintiff, | : : | |
| v. | : : | Case No. 1:16-cv-02459-SCJ |
| THOMAS W. AVENT, Jr., and RAYMOND J. PIRRELLO, Jr., | : : : | |
| Defendants. | : | |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S THIRD MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OF MURRAY AVENT

The SEC respectfully moves *in limine* for the exclusion of testimony by Defendant Thomas Avent's brother, Murray Avent, because he has no first-hand knowledge of the facts underlying this case.

Defendant Avent has identified Murray as a "will call" witness on his trial witness list. (Docket No. #103-10) Although Avent's reasons for calling his brother as a witness are unclear, it is undisputed that Murray: (1) has never communicated with Defendant Pirrello; (2) learned everything he knows about the facts of this case from his brother; (3) has no knowledge about Defendants' communications with one another; (4) knows nothing about the potential mergers that Avent was working on at KPMG; and (5) offers only inadmissible

hearsay regarding the relationship between Avent and Pirrello.  Accordingly, Murray Avent's testimony should be excluded as irrelevant, not based on personal knowledge, unfairly prejudicial, and misleading to the jury.  *See* Fed. R. Evid. 401, 403, 602.  In addition, to the extent that Murray Avent plans to vouch for his brother's character, such evidence also is inadmissible.  *See* Fed. R. Evid. 404(a)(1).

## DISCUSSION

In his initial disclosures, Defendant Thomas Avent identified his brother Murray as a potential witness in this case. (*See* Ex. 1, Avent's Sept. 28, 2016 Initial Discl., at Attachment A)  In describing what Murray Avent had to offer, Avent's counsel disclosed that Murray "has knowledge of, among other things, the dispute between Mr. Pirrello and Mr. Avent that resulted in the $50,000 payment from Mr. Pirrello to Mr. Avent." (*Id*. at 2)  Murray echoed this theme at his deposition, testifying that he was "called" as a witness "because I'm a victim, along with my brother, of some bad stock recommendations by Mr. Raymond Pirrello." (Ex. 2, Murray Avent Dep. Tr. at 19)  But, at his deposition, <u>Murray Avent admitted that he had absolutely no first-hand knowledge regarding the very subject he is supposed to testify about</u>.  Murray Avent expressly conceded that (1) he has never met – or even communicated with – Pirrello (much less

received a stock recommendation directly from him) and (2) everything he knows about Pirrello <u>he learned second-hand from his brother</u>. In fact, Murray Avent repeatedly confirmed that he had no interactions with Pirrello:

Q. Let's talk about Ray Pirrello. How do you know Ray Pirrello?

A. I do not.

Q. So you have never met him?

A. **<u>I never met the man</u>**.

Q. How do you know about Ray Pirrello?

A. **<u>Through my brother</u>**.

\*   \*   \*

Q. So I noticed you've described both of these investments as you acting on the recommendation of Pirrello?

A. That's correct.

Q. This is a man that you have never spoken to?

A. **<u>That's correct</u>**.

\*   \*   \*

Q. Have you ever made any attempt to communicate with Mr. Pirrello even if it was unsuccessful?

A. **<u>None</u>**.

(*Id*. at 50, 55, 63-64 (emphasis added))

3

Murray also confirmed that everything he knows about Thomas Avent's relationship with Pirrello he learned second-hand from his brother:

> Q. . . . Would I be correct in concluding that anything you know about your brother's relationship with Ray Pirrello, you would have learned through conversations with your brother?
>
> A. **That's correct.** Their relationship.
>
> Q. In other words, he would have told you and that's the only way you would have known it?
>
> A. **That's correct**.

(*Id.* at 64 (emphasis added).)

Then, Murray Avent confirmed that he was not even Pirrello's client, and that he only learned about Pirrello's stock recommendations through his brother:

> Q. Okay. Let me clarify what I was asking. Neither Mr. Pirrello nor anyone else ever tried to trade in your accounts without authorization; correct?
>
> A. **I never had an account with Mr. Pirrello**.
>
> Q. Is that a yes?
>
> A. Yes.
>
> Q. So do you personally know whether Mr. Pirrello made trades in your brother's account without his knowledge or are you relying in confidence upon what he told you about what occurred?
>
> A. I'm relying on the confidence of what my brother told me had occurred.

4

> Q. You don't have any additional way of knowing whether that happened other than your brother; correct?
>
> A. **That's correct.**

(*Id.* at 67-68 (emphasis added))

For good measure -- after confirming that he has no first-hand knowledge on the topic that he was supposed to testify about -- Murray Avent admitted that he does not know anything about any <u>other</u> aspect of this case:

> Q. Let's take them one at a time. Do you know anything personally about the three acquisitions that are described in the SEC's complaint?
>
> A **No.**
>
> Q. Do you know anything personally about the communications, both texts and telephone, that are described in the SEC's complaint?
>
> A. **No.**
>
> Q. Do you know anything about the purchases of stock by Larry Penna and members of his family that are described in the complaint?
>
> A. **No.**
>
> Q. Do you happen to know whether your brother performed due diligence on the Radiant, Midas, or BrightPoint acquisitions?
>
> A. **No.** And I can probably save you some time there because you can ask this question 100 times, and the answer is going to be 100 times coming back to you that I have never discussed anything -- company

5

> -- that my brother was working on through his entire career. I have never discussed anything like that... **I have never discussed anything that -- any company that my brother was working for**.

(*Id*. at 20-21 (emphasis added).)

Without firsthand knowledge of the events leading to this suit, any testimony by Murray Avent would flunk even the most basic tests for admissibility. Under the standard established by Rule 401 of the Federal Rules of Evidence, Murray Avent's testimony is irrelevant. Since he is not a percipient witness and is merely parroting his brother, Murray's testimony does not make any fact in this case more or less probable. *See e.g., U.S. v. Wagner*, 382 F.3d 598, 616 (6th Cir. 2004) (affirming exclusion of audiologist whose proposed testimony would neither explain nor excuse false statements made by defendant). And, by his own admission, Murray Avent lacks personal knowledge regarding the facts of this case as required under Fed. R. Evid. 602. *See e.g., Boyd v City of Oakland*, 458 F.Supp.2d 1015, 1031 (N.D. Cal. 2006) (excluding testimony of plaintiff's mother, regarding his statements shortly after search police search, because she was not present for the search and therefore lacked personal knowledge). To boot, Murray Avent has confirmed that everything he knows about Pirrello <u>he learned from his brother</u>. In other words, any proposed testimony from Murray

6

related to the relationship between Pirrello and Thomas Avent would be classic hearsay and is inadmissible under Fed. R. Evid. 802.

With nothing relevant (or admissible) to add, it appears that, in reality, Murray has been included in Thomas Avent's witness list for another reason: to vouch for Thomas' character and to ridicule the SEC's investigation. At his deposition, Murray – despite lacking any first-hand knowledge of the facts of the case or the SEC's investigation – offered a strident defense of his brother. First, Murray dismissed the SEC's investigation as "a witch hunt," (Ex. 2 at 16) Second, Murray offered assurances on subjects that he knows nothing about. After admitting that he knows nothing about his brother's communications with Pirrello, Murray swore that Thomas could not possibly have provided an illegal tip: "I know my brother, and I know my brother would not have given such an individual or any individual any information like that." (*Id.* at 22) Murray then completed his inadmissible triptych by vouching for his family's flawless reputation for honesty. Murray testified that his father "was honest as the day was long and he never turned a bad dime. And that's the kind of philosophy in our family. That's why this has been so egregious to us is that we have never turned a crooked dime in my family . . ." (*Id.* at 38-39)

Murray's desire to defend his family's reputation is understandable. But, his testimony about his brother's character has no place in this litigation. This is classic character evidence that must be excluded under Fed. R. Evid. 404(a)(1). *See, e.g.*, FRE 404(a)(1), 2006 Advisory Notes ("The Rule has been amended to clarify that in a civil case evidence of a person's character is *never* admissible to prove that the person acted in conformity with the character trait" (emphasis added)). Accordingly, this Court should enter an order now precluding Murry Avent from offering such testimony. *SEC v. Acord*, 2010 WL 11505963, *1 (S.D. Fla. Aug. 23, 2010) (granting SEC's motion to exclude all witnesses planning to testify about defendants' "good character").

Murray's testimony would constitute an impermissible appeal to the sympathy of the jury and a blatant attempt to distract from the actual facts of the case. Murray's attempt to bolster his brother's defense through character testimony and an uninformed verbal assault on the SEC's investigation is, therefore, inadmissible under Fed. R. Evid. 403. *See e.g., U.S. v. Harris*, 491 F.3d 440, 447-49 (D.C. Cir. 2007) (even otherwise-admissible character evidence may be excluded if its probative value is outweighed by danger of unfair prejudice). Here, Murray's testimony about the SEC's investigation is uninformed and has little, if any, probative value. It is merely designed to prejudice the SEC and to

distract or mislead the jury from considering the SEC's evidence regarding insider trading.

## CONCLUSION

Murray Avent has nothing relevant to add to this case. He admits that: (1) he has no personal knowledge regarding the underlying facts; and, (2) on the very subject he has been designated to testify about, he knows nothing except what he was told by his brother. In addition, his testimony would constitute character evidence which is inadmissible in a civil case. The SEC respectfully requests that the Court exclude Murray Avent from testifying at trial.

Dated: September 21, 2018.

**Respectfully submitted,**

*/s/John E. Birkenheier*
John E. Birkenheier
Georgia Bar No. 058158
birkenheierj@sec.gov
Robert M. Moye (admitted *pro hac vice*)
Illinois Bar No. 6225688
moyer@sec.gov
Ruta G. Dudenas (admitted *pro hac vice*)
Illinois Bar No. 6274848
dudenasr@sec.gov
SECURITIES AND EXCHANGE
COMMISSION
175 West Jackson Boulevard, Suite 1450
Chicago, Illinois  60604
(312) 353-7390
(312) 353-7398 (fax)

Pat Huddleston II
Georgia Bar No. 373984
huddlestonp@sec.gov
SECURITIES AND EXCHANGE
COMMISSION
950 East Paces Ferry, N.E., Suite 900
Atlanta, GA 30326-1382
(404) 842-7616
(404) 5752 (fax)

*Attorneys for Plaintiff Securities
 and Exchange Commission*

10

## Certificate of Service

I hereby certify that on September 21, 2018, I caused copies of the foregoing document to be served on counsel of record by filing it with the Court's ECF system, and by sending it by email and UPS delivery to:

Thomas W. Avent, Jr. (tomavent123@gmail.com)
3131 Slaton Drive NW
Apt. # 27
Atlanta, GA  30305

-and-

601 Sweetgum Lane
Oxford, MS  38655

*Pro Se*

                                            */s/ John E.  Birkenheier*
                                            John E.  Birkenheier