IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : : |
| Plaintiff, | : : |
| v. | : Case No. 1:16-cv-02459-WMR : |
| THOMAS W. AVENT, Jr., and RAYMOND J. PIRRELLO, Jr., | : : : |
| Defendants. | : |

### DEFENDANT RAYMOND J. PIRRELLO, JR.'S MOTIONS IN LIMINE

Defendant Raymond J. Pirrello, Jr., through his attorneys, respectfully requests that the Court grant the following motions in limine.

### I. The Court Should Exclude Testimony of Lawrence J. Penna

Evidence is only admissible if it is relevant, i.e. "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401, 402. But even relevant evidence should be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. Because Mr. Penna's testimony will not advance the search for truth in this litigation—and instead poses grave risk of prejudice and confusion—the Court should exclude his testimony.

Mr. Penna consistently has refused to provide any substantive testimony in this matter. In a November 2015 interview with the Securities & Exchange Commission (the

1

"SEC" or "Plaintiff"), Mr. Penna invoked his Fifth Amendment rights and refused to answer any questions regarding the SEC's allegations against himself and his future co-defendants, Messrs. Avent and Pirrello. While the SEC initially named Mr. Penna as a defendant in this action, less than four months after the SEC filed its Complaint, Mr. Penna settled the SEC's claims without admitting or denying the Complaint's allegations, agreeing to pay $171,610.39 to the SEC. See Dkts. 1 (July 7, 2016), 32 (Oct. 25, 2016). Yet the SEC has subpoenaed Mr. Penna to testify at trial with the expectation that Mr. Penna invoke his Fifth Amendment privilege—with the intent that the jury will take an adverse inference against **Mr. Pirrello**. See Dkt. 21, Plaintiff's Response to Defendant Avent's Motion in Limine to Exclude Testimony of Lawrence J. Penna at 2 (Oct. 10, 2018).

As Mr. Pirrello previously briefed, "it is black-letter law that a witness may both assert his Fifth Amendment rights and testify to his own innocence." Dkt. 261-25 at 2 (citing Ohio v. Reiner, 532 U.S. 17, 21 (2001)); United States v. Straub, No. CRIM 04-20-06-PA, 2007 WL 1432023, at *2 (D. Or. May 11, 2007), aff'd in part, rev'd in part and remanded on other grounds, 538 F.3d 1147 (9th Cir. 2008)). In civil cases, an adverse inference may be drawn against a party who invokes the Fifth Amendment. Baxter v. Palmigiano, 425 U.S. 308, 318 (1976). Furthermore, under certain circumstances, an adverse inference may be drawn against a party where a non-party invokes the Fifth Amendment. See, e.g., LiButti v. United States, 107 F.3d 110 (2d Cir. 1997).

However, undersigned counsel has identified no authority supporting the SEC's goal of extending an adverse inference from one co-defendant's invocation of the Fifth Amendment to **another** co-defendant who does **not** invoke the Fifth Amendment. Such

a holding would pervert the very purposes of Fifth Amendment jurisprudence.

### A. Mr. Penna's Testimony is Inadmissible Because it is Relevant to Nothing Except his Own Credibility, Which is Not at Issue

As a threshold matter, a civil witness's invocation of the Fifth Amendment is probative merely of the witness's credibility, not of the underlying, substantive facts. See, e.g., United States v. Wilchcombe, 838 F.3d 1179, 1194 (11th Cir. 2016) (Jordan, J., concurring) ("a defendant who testifies at trial, and who places his credibility on the line, cannot use the Fifth Amendment as a 'shield against contradictions of his untruths.'") (quoting Harris v. New York, 401 U.S. 222, 224 (1971)). Indeed, the "'invocation of the Fifth Amendment is not a substitute for relevant evidence' and does not free a litigant from 'adducing proof in support of a burden which would otherwise have been his.'" Amusement Indus., Inc. v. Stern, 721 F. App'x 9, 11 (2d Cir. 2018) (quoting United States v. Certain Real Prop. & Premises Known as 4003-4005 5th Ave, Brooklyn, N.Y., 55 F.3d 78, 83 (2d Cir. 1995)).

Therefore, because the SEC seeks no testimony from Mr. Penna except for his invocation of the Fifth Amendment—in other words, the SEC seeks no substantive information at all—his testimony would provide **no** evidence relevant to this trial's material disputed issues. Cf. Coquina Investments v. TD Bank, 760 F.3d 1300, 1311 (11th Cir. 2014) (the "overarching concern" guiding admissibility is "whether the adverse inference is trustworthy under all of the circumstances and will advance the search for the truth.") (quoting LiButti v. United States, 107 F.3d at 124 (2d Cir. 1997)). And as he will provide no substantive statements that his invocation would undermine, Mr. Penna's

testimony would not even be relevant to his own credibility, let alone to Mr. Pirrello's.

Because Mr. Penna has settled with the SEC and has refused to provide **any** relevant testimony, he also is unable to provide any admissible testimony. See Rainey v. Beech Aircraft Corp., 827 F.2d 1498, (11th Cir. 1987), rev'd on other grounds, Beech Aircraft Corp v. Rainey, 488 U.S. 153 (1988). Therefore, the Court should exclude him entirely.

### B. The Court Should Exclude Mr. Penna's Testimony Because it has No Probative Value and Would Only Prejudice Defendants and Confuse the Issues

Furthermore, the limited jurisprudence that allows adverse inferences arising out of non-parties' invocation of the Fifth Amendment does not justify admitting Mr. Penna's testimony. Those cases build upon the principle that "[a] non-party's silence in a civil proceeding implicate Fifth Amendment concerns to an even lesser degree" than a party's silence does. F.D.I.C. v. Fidelity & Deposit Co. of Maryland, 45 F.3d 969, 977 (5th Cir. 1995) (quoting RADS Servs., Inc. v. Aetna Casualty & Sur. Co., 808 F.2d 271, 275 (3d Cir. 1986)). Of course, because the SEC investigated and accused Mr. Penna of conduct that would violate both criminal and civil securities laws, his Fifth Amendment concerns were paramount, and his silence was constitutionally-guaranteed.

Instead, the caselaw requires case-by-case analysis. See, e.g., Coquina, 760 F.3d at 1311–12. Furthermore, all cases reviewed by undersigned counsel involve circumstances where the non-party witness appeared to be invoking the Fifth Amendment in order to protect a party. See, e.g., id. (holding that court did not abuse its discretion in allowing adverse inference where the witness's legal fees were paid by the party which was his

former employer; the witness's attorney had offered to cooperate in the party's internal investigation; the witness's assertion of the privilege likely advanced the mutual interests of the witness and the party; and the witness was a "key figure" in the lawsuit against the party); LiButti, 107 F.3d at 110 (vacating and remanding refusal to grant adverse inference where non-party witness refused to inculpate his daughter); RAD Servs., Inc. v. Aetna Cas. and Sur. Co., 808 F.2d 271, 275 (3d Cir. 1986) (approving imputation of ex-employees' invocations of the Fifth Amendment to their former employer). Conversely, it is appropriate to assume that Mr. Penna invoked the Fifth Amendment in order to protect himself.

As the SEC and Mr. Avent both previously noted, the fundamental question is "whether the adverse inference is trustworthy under all the circumstances and will advance the search for truth." See Dkt. 184-1 at 5 (Sept. 26, 2018) (quoting Coquina Investments, 107 F.3d at 124); accord Dkt. 201 at 4 (Oct. 10, 2018). Here, because Mr. Penna is a defendant in this case, he had his own reasons for invoking the Fifth Amendment. Accordingly, his invocation may warrant an adverse inference against his own credibility. But there is no law or reason that explains why Mr. Penna's attempt to protect himself warrants adverse inferences against his co-defendants.

But unlike Mr. Penna, both Messrs. Avent and Pirrello intend to testify at trial and "place [their] credibility on the line." See Wilchcombe, 838 F.3d at 1194. Unless they, themselves, attempt to "use the Fifth Amendment as a 'shield against the contradictions of [their] untruths," id., extrapolating an adverse inference from Mr. Penna to either of his co-defendants is unjustifiable.

5

Allowing the SEC to call Mr. Penna solely so it can argue for an adverse inference against Mr. Pirrello does nothing to "advance the search for truth." Instead, it would merely attempt to insinuate guilt-by-association and prejudice the jury against Mr. Pirrello in violation of Rule 403. The Court should exclude testimony by Mr. Penna.

## II. The Court Should Order Limited Discovery Into the SEC's Investigation of KPMG's Misappropriation of Confidential Information

One month ago, Plaintiff announced that it had charged Mr. Avent's former employer with conspiring to and receiving stolen information about future Public Company Accounting Oversight Board ("PCAOB") inspections. See SEC Press Release 2019-95, KPMG Paying $50 Million Penalty for Illicit Use of PCAOB Data and Cheating on Training Exams (June 17, 2019). The press release further noted that in 2018, the SEC and U.S. Attorney's Office for the Southern District of New York filed civil and criminal charges against six accountants who were particularly involved in the wrongdoing. Id.

In that Consent Order, KPMG admitted that "senior members of [its] Audit Quality and Professional Practice ("AQPP" or "National Office")—which is responsible for the firm's system of quality control—improperly obtained and used confidential information belonging to the [PCAOB]," "includ[ing] lists of the specific audit engagements the PCAOB planned to inspect, the criteria the PCAOB used to select engagements for inspection, and the focus areas of the inspections." Consent Order, In re KPMG LLP, No. 3-19203 at 2 (June 17, 2019).

Plaintiff's Order also found that "numerous KPMG audit professionals cheated on internal training exams by improperly sharing answers and manipulating test results."

6

Id. Plaintiff's Co-Directors of Enforcement remarked, "[t]he breadth and seriousness of the misconduct at issue here is, frankly, astonishing" and "[t]he conduct was particularly troubling because of the unique position of trust that audit professionals hold." Id.

Consequently, on July 19, 2019, Mr. Pirrello requested that Plaintiff "provide Defendants with a list of all SEC personnel who worked on the investigation that gave rise to the June 2017 consent order in In re KPMG LLP, No. 3-19203." Mr. Avent joined this request and additionally requested "a list of all KPMG-affiliated individuals who were interviewed, who provided information or materials, or from whom testimony was taken in connection with the In re KPMG LLP matter." On July 22, 2019, Plaintiff rejected Defendants' requests. This Court should order Plaintiff to, at very least, identify its own personnel who have firsthand knowledge of the details of KPMG's cheating and allow Defendants to require their testimony at trial.

Plaintiff's investigation of and findings regarding KPMG's misconduct are relevant to this case because Plaintiff seeks to argue that KPMG is an upstanding organization with airtight confidentiality and ethics procedures, while painting Mr. Avent as a greedy, corrupt outlier who flagrantly disobeyed his employer's demands. See, e.g., Plaintiff Exhibits 12, 13.

Presumably in furtherance of that narrative, Plaintiff has subpoenaed Heidi Murdy-Michael, KPMG's National Partner in Charge – Risk Management, who appears to have no knowledge of the transactions at issue, Mr. Avent, or Mr. Pirrello. Plaintiff also has subpoenaed multiple audit partners, including Richard Cloyd, Jon McKee, and Robert Soles. Thus, Plaintiff's investigation of KPMG is relevant not only to the substance

7

of its accusations against Defendants, but also particularly relevant to these witnesses' credibility.

As this Court noted at the pre-trial conference, here, where Messrs. Avent and Pirrello argue that they never communicated about material nonpublic information, let alone any that Mr. Penna traded upon, "mistaken identity" evidence is relevant to show that even if insider trading did occur, neither Mr. Avent nor Mr. Pirrello had anything to do with it. Just one month ago, Plaintiff proclaimed that "[t]he breadth and seriousness of the misconduct at issue here is, frankly, astonishing." See Consent Order. Of course KPMG's "astonishing[ly]" rampant misappropriation and cheating is relevant to whether Messrs. Avent and Pirrello can be blamed for alleged leaks of mergers and tender offers facilitated by KPMG.

**CONCLUSION**

For the foregoing reasons, Mr. Pirrello respectfully requests that the Court grant his motions in limine.

Dated:  July 22, 2019

/s/ Martin H. Kaplan
Martin H. Kaplan (admitted *pro hac vice*)
New York Bar No. 1053701
mkaplan@gusraekaplan.com
Kari Parks (admitted *pro hac vice*)
New York Bar No. 5379003
kparks@gusraekaplan.com
GUSRAE KAPLAN NUSBAUM PLLC
120 Wall Street
New York, New York 10005
(212) 269-1400

Gregory S. Brow
Georgia Bar No. 086422
greg.brow@dentons.com
DENTONS US LLP
303 Peachstreet Street N.E., Ste. 3500
Atlanta, Georgia 30308
(404) 527-4361

*Attorneys for Defendant Raymond J. Pirrello, Jr.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2019, I caused copies of the foregoing document to be served on counsel of record by filing it with the Court's ECF system.

/s/ Kari Parks
Kari Parks